U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

JAN 2 9 2007

ROBERT H. SHEMWELL, CLERK
BY _____
        DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

STATE OF LOUISIANA               CIVIL ACTION NO. 06-1368

VERSUS                           U.S. DISTRICT JUDGE DEE D. DRELL

CLAUDINE ABBOTT, et al           U.S. MAGISTRATE JUDGE JAMES D. KIRK

### REPORT AND RECOMMENDATION

Before the court is defendants' Motion to Dismiss, Doc. # 6, referred to me by the District Judge for Report and Recommendation.

The issue presented is whether to grant the State's petition to enjoin the defendants' (219 note holders of Public Investors, Inc.) state court proceeding against the State which has been ongoing for approximately 15 years, based on this court's judgment in <u>Guste v. Public Investors Life Insurance Company</u>, et al, 866 F.Supp. 301 (W.D.La. 1993),affirmed 35 F.3d 216 (5th Cir. 1994).

### Factual Background[1]

In about 1991 Public Investors, Inc. ("Public Investors"), a then unregulated holding company (its subsidiaries including Public Investors Life Insurance Company, Inc., Mid-West Life Insurance Company and other insurance companies ("Public Investors companies")), filed for bankruptcy protection after having become insolvent over the course of some time. The company had "engaged in several dubious financial transactions with some of its subsidiary

---

[1] Much of the background information in this case is taken from argument of counsel and is not necessarily proven in this case. It is provided for background informational purposes only.

companies and some of their officers. Some of those financial transactions were approved in advance by officials of the State." [2]

In December 1991, approximately 1300 stockholders, note holders and other investors in the Public Investors companies filed suit against the State in the 9th Judicial District Court in Rapides Parish, Louisiana. The case was ordered transferred to the 19th Judicial District Court in Baton Rouge by the Louisiana Third Circuit Court of Appeal on an exception to venue. Six amended petitions in state court over the years have added additional plaintiffs to the case. In January 1992 a separate suit, commonly referred to as the Lewis suit, was filed. The two suits were eventually consolidated and are referred to herein as "the Abshire suit", or "Abshire". In the meantime, Public Investors had filed for bankruptcy protection after the Louisiana Insurance Commissioner had moved to place Public Investors Life Insurance Company and Midwest Life Insurance Company in conservatorship.[3] The bankruptcy filing was pending in New Orleans and Robert Marrero ("Marrero") was appointed bankruptcy trustee. The filing was immediately converted to a Chapter 7 liquidation proceeding.

In 1993 a suit was filed in state court in Louisiana by the

---

[2] State of Louisiana v. Public Investors, Inc., 35 F.3d 216 at 218 (5th Cir. 1994).

[3] The State suggests that insurance companies may not take advantage of the federal bankruptcy laws but must be liquidated by the states' insurance departments.

2

State to have the Public Investors companies declared to be a "single business enterprise" in accordance with Louisiana legal doctrine.[4] The trustee for Public Investors, Marrero, removed the case to this court alleging bankruptcy jurisdiction and filed a counterclaim against the State alleging negligent regulation of the Public Investors insurance companies (which were owned by the bankrupt, Public Investors, Inc.) by the State regulatory bodies (principally the Department of Insurance) and State officials. The State asserted Eleventh Amendment immunity and challenged Marrero's standing to pursue the counterclaim. The State also asserted immunity pursuant to Louisiana's discretionary function immunity statute, LSA-R.S. 9:2798.1.

Judge Little found a limited waiver of 11th Amendment immunity, but dismissed the counterclaim finding that under Louisiana's discretionary function immunity statute, the state defendants were protected from suit. He expressly did not reach the standing argument made by the State. Judge Little also found that Marrero's proposed amended pleading would not change the result and, therefore, permission to file it was denied. (State ex rel Guste v. Public Investors Life Insurance Company, 866 F.Supp. 301 (W.D. La. 1993).The State later dismissed its single business enterprise claim which was the subject of that suit in this court.

---

[4] See Green v. Champion Ins. Co., 577 So.2d 249 (La.App.), writ denied, 580 So.2d 668 (La. 1991).

3

The 5th Circuit affirmed Judge Little's ruling on the basis of the Louisiana statute granting immunity for discretionary acts, not reaching the Eleventh Amendment immunity issue. State v. Public Investors, Inc. 35 F.2d 216 (5th Cir. 1994).In this Report, Judge Little's ruling and the 5th Circuit opinion affirming it will be referred to herein as "Guste".

Thereafter, the State, in the Abshire case in state court, filed exceptions of res judicata, no cause of action and of no right of action based on the argument that all of the plaintiffs' claims in Abshire were derivative of Public Investors' rights which had already been pursued to final judgment by the bankruptcy trustee in this court.

Two years later, and after both parties had complained to the Louisiana Supreme Court about the judge's delay (according to counsel), the state court granted the State's exception of no cause of action based on the discretionary function immunity statute but, unlike Judge Little of this court and the Fifth Circuit, allowed the plaintiffs an opportunity to amend to plead around the statute.[5]

This ruling resulted in the 7th amended petition in the Abshire case which added, for the first time, claims of intentional,

_____

[5] The statute contains an exception for acts which are criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or which constitute flagrant misconduct or are not reasonably related to the legitimate government objective for which the policymaking power exists. LSA. R.S. 9: 2798.1.

4

willful, wanton, and reckless misconduct by the regulatory officials at the Department of Insurance and the Office of Financial Institutions but added no new factual allegations. Exceptions were again filed by the State, this time limited to the claims of those plaintiffs who had filed proofs of claim in the bankruptcy proceeding. The exceptions were denied, the state courts holding that the claims and parties were not the same as those in the suit before Judge Little in this court.

In 2001 the State removed the Abshire suit to the Middle District on the basis of ERISA, believing it to have found an ERISA claim lurking in the litigation which would support federal jurisdiction. Counsel for the State candidly admits that the State was hoping to find a more favorable forum for its arguments that this court's ruling in Guste was res judicata, having failed to have the case dismissed by the state courts on the basis of res judicata (based on Judge Little's ruling), no cause of action, or no right of action. The Middle District quickly remanded the case to state court, finding no ERISA claim on which to base its jurisdiction, the only jurisdictional basis claimed by the State at that time.

Following remand and a state court-ordered mediation, plaintiffs filed an 8th amended petition, this time to add as party defendants in the case insurance companies who allegedly insured the State. However, in order to avoid the obvious problem that most

insurance policies contain an "intentional act exclusion", whereby coverage is excluded for acts which are intentional, the Abshire plaintiffs again pled negligence on the part of the defendants-the same allegations which had resulted in the state district judge granting the State's exception earlier and resulting in the 7th amending petition alleging intentional acts![6]

The State, having won dismissal based on these allegations of negligence before, again filed exceptions and argued that the discretionary function immunity statute protected the State defendants, as the state district judge had already once found. This time, however, the exceptions were denied by the state district judge and the decision affirmed by the court of appeal and, in February 2006, the Louisiana Supreme Court denied writs of certiorari.

Thereafter, this suit was filed to enforce and protect Judge Little's ruling and the 5th Circuit judgment affirming it and enjoining the state court proceeding. The State seeks an injunction pursuant to the re-litigation exception to the Anti-injunction Act, 28 U.S.C. 2283. The State says its request is narrowly tailored to

---

[6] The Abshire plaintiffs were apparently faced with a dilemma: if they pled negligence, they were faced with dismissal based on the discretionary function immunity statute; if they pled intentional act to avoid that statute, they would likely be faced with intentional act exclusions in the insurers' policies. Therefore, the plaintiffs adopted by reference the allegations in the 7th amended petition (which did allege intentional act in order to get around the discretionary function immunity statute), but in the body of the 8th amended petition, never once mentioned intentional act but asserted negligence some 25 times.

6

apply only to the state court claims of 219 Abshire case plaintiffs who are note holders and who filed proofs of loss in the bankruptcy case.[7]    The defendants have filed this motion to dismiss under FRCP 12(b)1 and 12(b)6, arguing that this court has no jurisdiction.

The parties agreed at oral argument in this case on January 11, 2007 that the case is ready for final decision on the merits by summary judgment-that there is no additional evidence to submit and neither party expressed a desire to file additional briefs should the court convert this motion to one for summary judgment.

## Standard of Review

### Standard Applicable on a Motion to Dismiss

In considering a motion to dismiss, the court must assume the truth of factual allegations of the complaint and liberally construe them in favor of the plaintiff. Nicastro v. Clinton, 882 F.Supp. 1128, affirmed 84 F.3d 1446. A motion to dismiss an action for failure to state a claim under FRCP 12(b)(6) admits the facts alleged in the complaint, but challenges plaintiff's right to relief based upon those facts. Crowe v. Henry, 43 F.3d 198, 203 (5th Cir. 1995). In particular, a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that

---

[7] Although there are other Abshire plaintiffs who filed proofs of loss in the Public Investors bankruptcy proceeding, those persons are policyholders of the Public Investors insurance companies which were being liquidated by the Louisiana Insurance Commissioner and were not part of the bankruptcy proceeding. Those persons have no claim against Public Investors, Inc.

the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. <u>Hirras v. National R.R. Passenger Corp</u>., 10 F.3d 1142, 1144 (5th Cir. 1994), *vacated on other grounds*, 512 U.S. 1231, 114 S.Ct. 2732, 129 L.Ed.2d 855 (1994); <u>Doe</u>, 753 F.2d at 1102. On a motion to dismiss, it is presumed that general allegations embrace the specific facts that are necessary to support the claim. <u>National Organization for Women, Inc. v. Scheidler</u>, 510 U.S. 249, 114 S.Ct. 798, 803, 127 L.Ed.2d 99 (1994), *citing* <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351 (1992). This court has long held that a Rule 12(b)(6) motion may be granted as to portions of a complaint. <u>Drewett v. Aetna Cas. & Sur. Co.</u>, 405 F.Supp. 877 (W.D. La. 1975). In accord, *see* <u>Decker v. Massey-Ferguson, Ltd.</u>, 681 F.2d 111 (2nd Cir. 1982); <u>Elliott v. State Farm Mut. Auto Ins. Co.</u>, 786 F.Supp. 487 (E.D.Pa. 1992).

In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute. Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief. <u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th C. 2001). "A court may base its disposition of a motion to dismiss for lack of subject matter jurisdiction on (1) the complaint alone; (2) the complaint supplemented by

undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Robinson v. TCI/US West Communications, Inc., 117 F.3d at 900 (5th C. 1997).

In general, where subject matter jurisdiction is being challenged, the trial court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case. See Land v. Dollar, 330 U.S. 731, 735 & n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947). In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the court can decide disputed issues of material fact in order to determine whether or not it has jurisdiction to hear the case.

Analysis

The State bases jurisdiction in this court on 28 U.S.C. 1334, bankruptcy jurisdiction, and seeks an injunction of the state court proceedings under the re-litigation exception to the Anti-Injunction Act, 28 U.S.C. 2283. The State asserts that the matters claimed and sought by the defendants here, as plaintiffs in the state court proceeding, were decided by final judgment of U.S. District Judge F. A. Little, Jr. and by the 5th Circuit Court of Appeals in Guste and that plaintiffs may not re-litigate that decision.

Defendants' motion to dismiss sets forth the argument under FRCP 12(b)(1) that this court has no jurisdiction because Judge Little had no jurisdiction in the prior suit in this court and,

9

under FRCP 12(b)(6), that the State has not met the requirements for protection under the re-litigation exception because: (1)the parties are not the same as in the Guste suit, (2) the claims are different, (3) this court had no jurisdiction in Guste, and (4) there was no final judgment in Guste. <u>Vines v. University of Louisiana at Monroe</u>, 398 F.3d 700 (5th Cir. 2005).

<u>The 12(b)(1) Motion</u>.

Defendants' 12(b)1 motion fails, for the issue under 12(b)(1) is whether this court has subject matter jurisdiction to hear this case now, not whether Judge Little had jurisdiction to decide the Guste case in 1993. This court has subject matter jurisdiction pursuant to 28 U.S.C 1334 to protect this court's judgments and the defendants do not challenge jurisdiction on that basis. The defendants' argument that Judge Little did not have jurisdiction 14 years ago is an attempt to collaterally attack that judgment, as affirmed by the 5th Circuit court of appeal. Such collateral attacks are prohibited. <u>Guevara v. Gonzales</u>, 450 F.3d 173 (5th Cir. 2006), citing <u>Royal Insurance Co. v. Quinn-L Capital Corp.</u>, 960 F.2d 1286 (5th Cir. 1992).

What the defendants are really suggesting is that Judge Little had no jurisdiction to decide the claims made by the Trustee <u>on behalf of creditors</u> of Public Investors. Defendants are arguing that Judge Little did not decide those claims, but decided only the Trustee's claims on behalf of the bankrupt, Public Investors.

10

Therefore, they reason, his ruling, as affirmed by the 5th Circuit, cannot form the basis for an action to protect that judgment under the re-litigation exception. Specifically, they point to Judge Little having expressly declined to decide the issue of the trustee's standing raised by the State in the Guste case.

While defendants may not collaterally attack the jurisdiction underlying the Guste decision, jurisdiction--in this case the specific issue being standing--is one of the four prerequisites for applying the relitigation exception. Vines, supra. Standing also has application to the determination of another of the four requirements, that is the issue of privity between the Public Investors' trustee, Marrero in Guste, and the creditors of Public Investors in Abshire.

## The Relitigation Exception to the Anti-Injunction Act
### (the 12(b)(6) Motion).

The Anti-Injunction Act generally prohibits federal courts from interfering with proceedings in state court. 28 U.S.C. 2283. One of three exceptions to the Act is the re-litigation exception. "The relitigation exception was designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court. It is founded in the well-recognized concepts of res judicata and collateral estoppel." Chick Kam Choo v. Exxon Corp., 108 S.Ct. 1684 (1988).

In order to determine if the relitigation exception to the

11

Anti-Injunction Act is applicable to preclude litigation of a claim in state court under the doctrine of res judicata, the court applies a four-part test. "First, the parties in a later action must be identical to (or at least in privity with) the parties in a prior action. Second, the judgment in the prior action must have been rendered by a court of competent jurisdiction. Third, the prior action must have concluded with a final judgment on the merits. Fourth, the same claim or cause of action must be involved in both suits." Vines, supra.

The doctrine of collateral estoppel applies to prevent issues of ultimate fact from being relitigated between the same parties (or those in privity with them) in a future lawsuit if those issues of fact have once been determined by a valid and final judgment. While complete identity of all parties is not required, the party against whom the collateral estoppel would be applied generally must either have been a party, or privy to a party, in the prior litigation. Vines, supra.

A) Jurisdiction (standing).[8]

---

[8] The defendants also briefly suggest that, because Judge Little found in Guste that the State had waived its Eleventh Amendment immunity only to a limited extent, subject matter jurisdiction was lacking. The Fifth Circuit, in affirming on the basis of Louisiana's discretionary function immunity statute, found it did not need to consider the Eleventh Amendment immunity argument.

That the State may have been entitled to immunity does not mean the court had no subject matter jurisdiction. Obviously the district court and the court of appeals found sufficient jurisdiction present to decide the case. Although the immunity provided by the Eleventh amendment is similar to a subject matter jurisdiction bar, it is not the same. See Perez v. Region 20 Educ. Serv. Ctr. 307 F.3d 318, 333 (5th Cir. 2002); Edelman v. Jordan, 415 U.S. 651, 678 (1974); Patsy v. Bd. of Regents

The constitutional minimum of standing requires an allegation that the plaintiff sustained a direct injury, that is, an invasion of a legally protected interest which is concrete and particularized and actual or imminent and not conjectural or hypothetical. The injury must be connected to defendant's conduct and it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 112 S. Ct. 2130 (1992). Without standing, there is no subject matter jurisdiction. Lujan, supra; Cobb v. Central States, 461 F.3d 632 (5th Cir. 2006).

In the Guste case, the trustee asserted claims on behalf of the bankrupt corporation, Public Investors, and also on behalf of its creditors. In his cross claim, he specifically pled "on behalf of all creditors of the Bankruptcy Estate, especially the promissory note holders of Public Investors, Inc. . . . ." A similar claim is made in his counterclaim and it is clear throughout his complaint, that he is pursuing claims on behalf of the estate and its creditors.

In its opinion affirming the judgment, the Fifth Circuit recognized more than once that the trustee was pursuing claims on behalf of the creditors as well as the estate. State, 35 F.3d 216.

Not only did the trustee, Marrero, in fact assert claims on

---

of Fla., 457 U.S. 496, 516 (1982); Ogrey v. Texas, 2006 WL 3407833 (5th Cir. 2006).

behalf of the creditors, he also had the legal authority to do so as part of his statutory duty to marshal the assets and distribute them to the creditors. 11 U.S.C. §704. "The basic idea behind a corporate chapter 7 bankruptcy case is the marshaling of assets and their pro-rata distribution to creditors." The American National Bank of Austin, v. Mortgageamerica Corp., 714 F.2d 1266 (5th Cir. 1983); Ward v. Vining, 894 F.2d 771 (5th Cir. 1990). See also, 11 U.S.C. 541, 543.

While a claim for damages to a corporation belongs to the corporation under Louisiana law,[9] and thus to the trustee after a petition in bankruptcy is filed, even if the claim for damages were to be considered as belonging to the creditors, the trustee nevertheless represents the creditors as to such claim under federal bankruptcy law.

"The object of the Bankruptcy Act is to benefit creditors by making all the pecuniary means and property available to their payment and in furtherance of this object, there passes to the trustee, not only what in strictness may be called the property of the bankrupt, but also those rights of action to which he was entitled for the purpose of recovering real or personal property, or damages respecting that which has been unlawfully diminished

---

[9] See Joseph v. Hospital Service District No.2, 939 So.2d 1206 (La. 2006); Amador v. Reggie, 924 So.2d 415 (La. App. 3rd C., 2006); Joe Conte Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc., 689 So.2d 650 (La. App. 4 C., 1997).

in value, withheld or taken from him." Dallas Cabana, Inc. v. Hyatt Corp., 441 F.2d 865 (5th Cir. 1971). Substantially all of the rights and causes of action of the bankrupt corporation as of the date the bankruptcy petition is filed vest in the trustee. Dallas Cabana, supra; 11 U.S.C. 541 et seq "A trustee in bankruptcy * * * has title to all the assets of the bankrupt or debtor, and represents all the creditors. It is his or its right to prosecute all causes of action which could have been prosecuted by the bankrupt or debtor, had bankruptcy not intervened." Dallas Cabana, supra, (quoting from Gochenour v. George & Francis Ball Foundation, 117 F.2d 259 (7th Cir. 1941)).

The Fifth Circuit has expressly recognized that the trustee in bankruptcy represents all of the bankrupt's unsecured creditors. Still v. Wright, 963 F.2d 75 (5th Cir. 1992)[10]. Bankruptcy provides protection to all of the bankrupt's creditors by providing an orderly liquidation proceeding under which all creditors are treated equally, while protecting against the threat of certain creditors pursuing their own remedies against the debtor's property, including its causes of action. See Mortgageamerica, 714 F.2d 1266 at 1274. Indeed, the trustee's fiduciary duty runs to creditors as well as to shareholders. Commodity Futures Trading Commission v. Weintraub, 105 S.Ct. 1986, (1985).

---

[10] Accord, Pease v. Production Workers Union of Chicago, 386 F.3d 819 (7th Cir. 2004).

15

Therefore, unless the claim of a creditor asserts a particularized injury to that creditor individually, as opposed to an injury to the creditors generally as a result of or derivative to an injury to the corporation, then the claim belongs to the corporation under Louisiana law[11] and inures to the benefit of the corporation's creditors under federal bankruptcy law, and the trustee is the proper person to assert the claim on behalf of the bankrupt and its creditors.[12]

Defendants suggest, however, that the possibility of the trustee representing creditors is foreclosed by the case of <u>Caplin v. Marine Midland Grace Trust Company of New York</u>, 92 S.Ct. 1678 (1972). Caplin held that a Chapter X trustee did not have standing to assert claims of misconduct by an indenture trustee.

Caplin is distinguishable. The holding in Caplin was based on an exhaustive analysis by the Supreme Court regarding reorganization proceedings and indenture trustees and concluded that Congress chose not to provide for reorganization trustees "to assume the responsibility of suing third parties on behalf of debenture holders." Instead, if, as in this case, a cause of

---

[11] Joseph v. Hospital Service District No.2, 939 So.2d 1206 (La. 2006); Amador v. Reggie, 924 So.2d 415 (La. App. 3rd C., 2006); Joe Conte Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc., 689 So.2d 650 (La. App. 4 C., 1997).

[12] Dallas Cabana, supra. See also St. Paul Fire and Marine Insurance Company v. Pepsico, Inc., 884 F.2d 688 (2nd Cir. 1989).

16

action is the property of the bankrupt debtor, the Bankruptcy
Code explicitly gives the trustee the right to assert the claim
on behalf of the estate and its creditors entitled to benefit
from recovery of the claim.

Judge Little's decision in Guste dismissing the claims of
the trustee, and the Fifth Circuit's decision affirming it,
applied, therefore, to all of the claims properly brought by
the trustee. Those claims included the claims of the unsecured
creditors, including the defendants here.

B) Privity

Privity is a "legal conclusion that the relationship between
the one who is a party on the record and the non-party is
sufficiently close to afford application of the principle of
preclusion." Southwest Airlines Co. v. Tex. Int'l. Airlines, 546
F.2d 84, 95 (5th Cir. 1977). Federal courts have consistently
held that a non-party to an action is still bound by and entitled
to the benefits of a judgment as though it were a party if it was
represented in the original action. See Meza v. Gen. Battery
Corp., 908 F.2d 1262, 1266-67 (5th Cir. 1990).

Based on the trustee's duties and authority under the
Bankruptcy Code and the nature of the allegations the trustee,
Marrero, made in the Guste suit, all as discussed above, I
conclude that the  trustee did represent the creditors of the

17

estate, including the 219 defendants here for res judicata and collateral estoppel purposes. The 219 Abshire plaintiffs are in privity with the trustee in Guste.

C) <u>Final Judgment</u>

Although defendants have alleged in brief that the decision in Guste was not a final judgment, they have failed to show that to be the case. Judge Little dismissed the trustee's claims on a motion to dismiss; the decision was appealed and the Fifth Circuit affirmed. The ruling in Guste is a final judgment. See <u>Harvey Specialty & Supply, Inc. v. Anson Flowline Equipment Inc.</u>, 434 F.3d 320 (5th Cir. 2005).

D) <u>Same Claim or Cause of Action</u>

Finally, the claims made in the Abshire litigation are the same as those made by the trustee, Marrero, in the Guste case. Res judicata requires that the same cause of action be involved in both proceedings and the doctrine of collateral estoppel requires that the same issue of fact or law be actually litigated and determined in a prior judgment. <u>Vines</u>, supra. Federal law of res judicata "bars all claims that were or could have been advanced in support of the causes of action on the occasion of its former adjudication, not merely those that were adjudicated." <u>Vines</u>, supra, quoting from <u>Nilsen v. City of Moss Point</u>, 701 F.2d 556, 560 (5th Cir. 1983). "Federal courts use a transactional test to determine whether two claims involve the same cause of action,

18

under which the critical question is 'not the relief requested or the theory asserted but whether the plaintiff bases the two actions on the same nucleus of operative facts." <u>Vines</u>, supra.

A review of the claims made by the trustee, Marerro, and by the Abshire plaintiffs reveals that they all arise from the same nucleus of operative facts-the alleged tortious failure to regulate and improper regulation of Public Investors' subsidiaries by the State defendants, resulting in losses to the corporation and its shareholders and creditors, including note holders. Similarly, the issue of fact  decided in Guste and presented in Abshire is also the same-the alleged fault of the State defendants in regulating or failing to regulate Public Investors' subsidiaries.

In Guste, the trustee alleged that the State defendants knew that Public Investors was insolvent and yet approved the sale of two life insurance companies, Universal Guaranty Life Insurance Company and Alliance Life Insurance Company and the distribution of the proceeds to prop up another subsidiary, Midwest Life Insurance Company. The trustee's complaint also alleges that the state knew of the repeated sales of property, Parkway Place, at an inflated price.

These transactions are also central to the Abshire plaintiffs' claims, although their claims, set forth in state court, are far more detailed than were the trustee's and do

allege additional specifics including other transactions by the Public Investors companies which the State is alleged to have failed to regulate.

I find that res judicata applies to preclude the plaintiffs from relitigating the fault of the State defendants regarding their regulation of Public Investors' subsidiaries. As noted above, res judicata operates to prevent relitigation not only of the claims actually made by Marrero as trustee, but also those claims which he could have made in support of his cause of action against the State for its fault in the regulation of Public Investors' subsidiaries. The nucleus of operative facts in both cases is the State's alleged failure to regulate so as to prevent the insolvency and bankruptcy of Public Investors and the resulting loss to its creditors, and others. I also find that collateral estoppel applies, for the issue of the State's fault in the regulation of the companies was decided by Judge Little in Guste, as well.

The defendants suggest that these issues have previously been decided by the state courts. However, it is for this court to protect its judgments. "[A] federal court winner should not be forced to bring a plea of res judicata in state court. <u>Parsons Steel, Inc. v. First Alabama Bank</u>, 106 S.Ct 768 (1986). Further, the federal court should not "stand idly by and hope that the state court perceives that the issues before it formed the basis

of prior federal court litigation." <u>Dow Agrosciences, LLC v.</u> <u>Bates</u>, 2003 WL 22660741 (N.D. Tex. 2003).[13]

I find that this court has subject matter jurisdiction and that the State has stated a claim for relief. Therefore, the motion to dismiss should be denied. Further, there being no genuine issue of material fact and the State being entitled to judgment as a matter of law (the parties having advised that they have no additional evidence or argument to offer), summary judgment should be granted.

For the foregoing reasons, IT IS RECOMMENDED that the defendants' motion to dismiss, doc. #6, be DENIED, and that the court, *sua sponte*, with notice, GRANT Summary Judgment in favor of the State and against the defendants and ENTER AN APPROPRIATE INJUNCTION pursuant to the relitigation exception to the Anti-Injunction Act.

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. A courtesy copy of any objection or

---

[13] The Louisiana courts' rulings on the State's various exceptions were interlocutory and therefore pose no bar to this court enjoining relitigation of issues already decided in this court. <u>Vines v. University of Louisiana at Monroe</u>, 398 F.3d 700 (5th Cir. 2005) and Louisiana cases cited therein.

response or request for extension of time shall be furnished to the district judge at the time of filing. Timely objections will be considered by the district judge before he makes his final ruling.

FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UN-OBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

## NOTICE

The District Court may enter summary judgment pursuant to FRCP 12(b) and 56.

THUS DONE AND SIGNED in chambers, in Alexandria, Louisiana, on this the 29th day of January, 2007.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE